IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**WHITE PINE INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                   **Case No.: 3:21-cv-00429**

**INTERSTATE TOWING, LLC**

    **Defendant.**
**and**

**FRANK WHITE, JR.,**

    **Intervenor.**

## MEMORANDUM OPINION AND ORDER

Pending are competing motions for summary judgment filed by Plaintiff White Pine Insurance Company ("White Pine") and Intervenor Frank White, Jr. ("White). (ECF Nos. 23, 25). White Pine and White have filed responses, replies, and a sur-reply, all of which have been considered by the Court. Defendant Interstate Towing, LLC ("Interstate"), has not participated in this action to date, but its involvement is not necessary to resolve the substantive question raised in the complaint for declaratory relief. Therefore, the Court finds the issue fully briefed and ready for resolution.

**I.**    **Background**

On January 10, 2020, Davie Baker, the owner and operator of Interstate, applied for commercial automobile insurance coverage with White Pine. A policy was

issued by White Pine, which provided $1,000,000 in liability coverage for any one accident or loss arising out of Interstate's towing business during the period of January 10, 2020 through January 10, 2021. (ECF No. 23-5 at 14, 21). The policy agreed to pay all sums an "insured" was legally obligated to pay for bodily injury or property damage caused by an accident resulting from the ownership, maintenance, or use of a covered vehicle. (*Id.* at 39). With a few exceptions that do not apply in this case, the policy defined the term "insured" as Interstate and anyone using a covered vehicle with the permission of Interstate. However, the policy included an endorsement titled "Non-Listed Driver Limitation." (*Id.* at 32). This endorsement amended the policy by reducing the coverage limits from $1,000,000 to "the compulsory or financial responsibility law limits" of the State in which the "covered vehicle" was "principally garaged" if the person driving the covered vehicle at the time of the accident was not a listed driver in the endorsement. (*Id.*). The only driver listed in Interstate's application for insurance, and thus on the endorsement, was Davie Baker. (ECF No. 23-2 at 8; ECF No. 23-2 at 10; ECF No. 23-5 at 32).

On November 7, 2020, Interstate was delivering a vehicle to a location in Huntington, West Virginia when its tow truck driver, Mr. Robert Hundall ("Hundall"), accidently ran over White's foot. (ECF No. 23-1). White allegedly suffered significant injuries from the accident and required multiple surgeries. Consequently, White notified White Pine of the incident and asserted a claim under Interstate's commercial automobile liability policy. White Pine determined that Hundall was not a listed driver on Interstate's policy; therefore, White Pine offered White the sum of $25,000, the amount of "financial responsibility" required under West Virginia's Vehicle Safety Responsibility Law. W. Va. Code § 17D-4-2. (ECF No.

2

24 at 9). After White rejected the offer, White Pine filed the instant complaint for declaratory judgment asking the Court to find that "Non-Listed Driver Limitation" endorsement in Interstate's policy capped the available insurance coverage for the claim asserted by White to the $25,000 required by West Virginia Code § 17D-4-2, rather than the $1,000,000 coverage available otherwise under the policy.[1]

## II. Motions for Summary Judgment

White Pine and White agree that there are no material facts in dispute, and that the operative facts are as follows: Hundall was an employee of Interstate and was driving the tow truck that injured White on November 7, 2020. Hundall had the permission of Interstate and Davie Baker to operate the tow truck. A commercial automobile policy issued by White Pine was in effect and covered the November 7, 2020 accident involving Interstate's tow truck. The insurance policy had bodily injury liability coverage limits of $1,000,000 for any one accident. The policy covered Interstate and permissive drivers of covered vehicles, but included a "Non-Listed Driver Limitation" endorsement that reduced the coverage limits from $1,000,000 per accident to the West Virginia minimum-required limits of $25,000 when the driver involved in the accident was not specifically included on a list of drivers named in the endorsement. Hundall was not a "listed" driver named in the endorsement, because Interstate did not identify Hundall as a driver in its application for insurance.

White Pine argues that insurers may incorporate endorsements, conditions, limitations, and exclusions in automobile insurance policies, so long as they do not conflict with the spirit and intent of the uninsured and underinsured motorist

---

[1] The Court notes that in two filings White Pine argues that it is entitled to summary judgment on various claims which are not asserted in this civil action. For the sake of clarity, this declaratory judgment action involves only the matter of whether the "Non-Listed Driver Limitation" endorsement reduces the available coverage limits.

3

provisions found in West Virginia Code § 33-6-31. White Pine contends that Davie Baker intentionally failed to disclose Mr. Hundall's employment, denying White Pine the opportunity to evaluate the added risk associated with an additional driver and charge an increased premium to account for that risk. White Pine asserts that the "Non-Listed Driver Limitation" endorsement is clear and unambiguous and, thus, is not subject to judicial interpretation; rather, full effect should be given to its plain meaning. White Pine relies on *Jones v. Motorist Mut. Insur. Co.*, 356 S.E.2d 634 (W. Va. 1987) and *Ward v. Baker,* 425 S.E.2d 245 (W. Va. 1992) in support of its position that its obligation to Interstate and White is limited to providing the minimum amount of insurance coverage required by West Virginia law.

In response, White claims that the omnibus clause in West Virginia Code § 33-6-31(a) is key to resolving this dispute. West Virginia Code § 33-6-31(a) states in relevant part:

> No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued or delivered in this state to the owner of such vehicle, or may be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the Division of Motor Vehicles of this state, unless it contains a provision insuring the named insured and any other person, except a bailee for hire and any persons specifically excluded by any restrictive endorsement attached to the policy, responsible for the use of or using the motor vehicle with the consent, expressed or implied, of the named insured or his or her spouse against liability for death or bodily injury sustained or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by such person[.]

W. Va. Code § 33-6-31(a). White explains that the omnibus clause requires automobile insurance policies to provide liability coverage to permissive users of covered vehicles, just as they do to vehicle owners, for claims related to bodily

4

injuries, allowing exclusions only in the case of a bailee for hire, or a person who is specifically excluded from coverage by name. Relying on *Burr v. Nationwide Mut. Ins, Co.,* 359 S.E.2d. 626 (1987), White contends that any provision in an insurance policy which attempts to contravene the omnibus clause is of no force and effect. According to White, the "Non-Listed Driver Limitation" endorsement in White Pine's policy clearly violates the omnibus clause and, therefore, is null and void. White disagrees with White Pine that the endorsement can still be applied to reduce the available liability coverage to the minimum required by West Virginia law, pointing out that the Supreme Court of Appeals of West Virginia ("WVSC") rejected such a position in *Ball v. United Fin. Cas. Co.,* ___ S.E.2d ___, 2022 WL 17038445 (W. Va. Nov. 17, 2022).

In a reply memorandum, White Pine raises a public policy argument, asserting that the cases cited by White cannot be applied here, because the vehicle in question was a tow truck covered by a commercial automobile policy. White Pine argues that granting White's summary judgment motion would relieve the tow truck industry of its obligation to identify drivers to insurances companies so that they can properly calculate the risk. In White Pine's view, if insurance companies cannot trust tow truck operators to fulfill that obligation, then insurance companies will have to raise premiums, resulting in exorbitant costs for tow truck operators, who will have no choice but to pass on the costs to their customers. White counters this argument by noting that the omnibus clause has been in effect in West Virginia for decades. Accordingly, it is likely that insurance companies, which are highly sophisticated business enterprises, have already factored into their premiums the risks associated with unknown permissive drivers.

5

### III. **Standard of Review**

Title 28 U.S.C. § 2201(a) authorizes federal district courts in a case of actual controversy to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not relief is or could be sought." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding that a declaratory judgment action is proper when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality[.]"). While the exercise of this power is discretionary, it is best employed "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and … when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir. 1996). Here, both parties seek resolution of a key coverage question.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Lyons v. City of Alexandria*, 35 F.4th 285 (4th Cir. 2022) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991). Consequently, motions for summary judgment impose a heavy burden on the moving party; it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Gary v. Facebook, Inc.*, 822 F. App'x 175, 179 (4th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Initially, the moving party has the burden to show there is no genuine dispute of material fact; once the motion is made and supported, the burden shifts to the nonmoving party to show there is a dispute. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003). To assert that a fact is genuinely in dispute, the nonmoving party must support its assertion and cannot rely on a bare denial in the pleadings. *Id.*; Fed. R. Civ. P. 56(e). If a party fails to address another party's assertion of fact, the court may grant summary judgment if the motion and supporting materials show the movant is entitled to it. Fed. R. Civ. P. 56(e).

### IV. Discussion

"In construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law." *Adkins v. Meador*, 494 S.E.2d 915, 920 (W. Va. 1997). "Provisions in an insurance policy that are more restrictive than statutory requirements are void and ineffective as against public policy." *Gibson v. Northfield Ins. Co.*, 631 S.E.2d 598, 604–05 (W. Va. 2005) (citations omitted). West Virginia law very plainly states that no policy of bodily injury liability insurance covering liability arising from the use of any motor vehicle may be delivered in this state to the vehicle owner by an insurer licensed in the state unless the policy contains a provision insuring the named insured, and anyone else using the vehicle with permission, against liability for bodily injury within the coverage of the policy arising from the negligent operation of the vehicle. W. Va. Code § 33-6-31(a). The primary purpose of this omnibus clause "is to maximize the availability of insurance proceeds; that the principal beneficiary of the clause is the

general public; and that the clause is remedial in nature and must be construed liberally so as to provide insurance coverage where possible." *Burr,* 359 S.E.2d at 632 (citing Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.,* 175 S.E.2d 478 (1970)). Simply put, the West Virginia "legislature has demonstrated a clear intent to afford coverage to anyone using a vehicle with the owner's permission as a means of giving greater protection to those who are involved in automobile accidents." *Id.*

Under the unambiguous language of the omnibus clause, Interstate and its permissive user, Mr. Hundall, are entitled to insurance coverage against the bodily injury claims asserted by White, unless Hundall falls within the exceptions written into the statute. Only two categories of people are excepted from the coverage mandated by the omnibus clause: bailees for hire and persons specifically excluded by a restrictive endorsement. W. Va. Code § 33-6-31(a). As Mr. Hundall was not a bailee for hire, that category is irrelevant. The WVSC has clarified that the second category of people excepted means individuals who are identified in the endorsement by their names. *Burr,* 359 S.E.2d at 632. Consequently, it is not enough to exclude people on the basis of a group, type, class, or description; instead, specific exclusion requires particularity in identifying the individual who is excluded. *Burr,* 359 S.E.2d at 632. If the person to be excluded by a restrictive endorsement is not specifically named, the endorsement is null and void as to that individual. *Id.* at 633.

In this case, the "Not-Listed Driver Limitation" endorsement is not a restrictive endorsement of the type envisioned by § 33-6-31(a). Indeed, it is the exact opposite of a restrictive endorsement because it requires the insured to list everyone who is entitled to receive full coverage under the policy, rather than listing those who are not entitled to receive any coverage. Therefore, Mr. Hundall's right to insurance

coverage under the omnibus clause is not affected in any way by the "Not-Listed Driver Limitation" endorsement. So, the question remains—if Mr. Hundall, and by extension Interstate, are entitled to insurance coverage by the omnibus clause, how much coverage is available?

White Pine answers this question by arguing that the endorsement sets the limit of coverage. White Pine suggests that the "Not-Listed Driver Limitation" endorsement does not run afoul of the omnibus clause, because it does not exclude Hundall from coverage, it merely sets the limit of coverage at the statutory minimum. Admittedly, White Pine's reliance on *Jones* and *Ward* was confusing at first, because both cases involve the type of restrictive endorsement explicitly described as an exception to the mandate of West Virginia Code § 33-6-31(a). However, upon reflection, the Court concluded that White Pine was simply attempting to bolster its position that as long as the minimum statutory coverage amounts are provided, insurance companies are free to place other express limitations on coverage without violating the omnibus clause.

However, the Court disagrees with White Pine's interpretation of the omnibus clause and related case law as they apply to this matter. To begin, *Jones* and *Ward* are not relevant to the issue in this case at all, as those cases involved the unique category of "excluded drivers," who are excepted in the omnibus clause. More importantly, White Pine is overlooking the operative language in the omnibus clause which answers the question in this particular action.

While the "Not-listed Driver Limitation" endorsement does not entirely exclude permissive drivers from coverage, it does seek to *reduce* the coverage available to them under the policy. Such a provision plainly violates the intent of

9

West Virginia Code § 33-6-31(a), which states that every permissive driver of a covered vehicle is protected "*within the coverage of the policy*" unless specifically excluded in a restrictive endorsement. *See Ball,* 2022 WL 17038445, at *7 ("Finally, this Court has held that provisions that purport to "***limit, reduce or nullify***" the liability coverage mandated by West Virginia Code § 33-6-31(a) are likewise void and unenforceable in their entirety.") (emphasis added) (citing *Gibson,* 631 S.E.2d at 600). The WVSC made clear in *Ball* that the explicit language of the omnibus clause requires insurance companies to cover an insured and a permissive user against liability for bodily injuries sustained as a result of the permissive user's negligence in using or operating a covered vehicle *up to the full limits of liability coverage available under the policy. Ball,* 2022 WL 17038445, at *8. The fact that the "Not-Listed Driver Limitation" endorsement does not operate as a total exclusion of coverage does not alter the fact that it contravenes the unmistakable purpose of West Virginia Code § 33-6-31(a) as recently interpreted by the WVSC.

White Pine's policy argument that the omnibus clause does not require liability coverage within the full limits of the policy because the tow truck was covered under a commercial automobile policy is not persuasive. The statute does not make a distinction as to the types of vehicles covered, indicating that the provisions of the omnibus clause apply to policies of bodily injury liability insurance covering liability "arising from the ownership, maintenance, or use ***of any motor vehicle***[.]" The purpose of the statute is to ensure the availability of liability insurance coverage regardless of the vehicle's use, in order to afford greater protection to the public in general. *Burr,* 359 S.E.2d at 632. The WVSC has encouraged a broader reading of the statute, not a more restrictive one. And, as White has pointed out, this has been the

10

position of the WVSC for decades. Given that the intent of the omnibus clause is well-settled, it is likely that insurance companies have factored the risks associated with permissive users into their premium rates.

As White Pine notes, the Department of Transportation already requires a special class of license for commercial tow truck drivers, and to obtain that license, they must pass a knowledge and skills test which complies with minimum federal standards, as well as heightened state mandates. As such, tow truck drivers are selected from a much smaller and more similarly-trained pool of drivers than the pool of drivers that purchase non-commercial automobile insurance. Yet, non-commercial automobile insurance carriers have accounted for the risks associated with permissive users for many years. Certainly, it should be no more difficult for companies such as White Pine to make this same type of calculation for commercial policyholders. White Pine implies that it would have greatly increased its premium had it been informed about Hundall, but such a suggestion is both speculative and debatable as the risk associated with Hundall appeared negligible. According to Hundall's testimony, at the time of the accident, he had been a tow truck driver for more than 22 years and had never had an accident. (ECF No. 23-4 at 6). If anything, his record would not have indicated any increased risk to White Pine.

Therefore, consistent with the prevailing law, the Court **FINDS** and **DECLARES** that Interstate and Hundall are entitled to $1,000,000 of bodily injury liability coverage under Commercial Automobile Insurance Policy No. WPCS004542 issued by White Pine, effective from July 1, 2020 through July 1, 2021, against claims asserted by Intervenor White.

## V. Order

Based on the forgoing, the Court **ORDERS** as follows:

1. Plaintiff's Motion for Summary Judgment, (ECF No.23 ), is **DENIED**; and

2. Intervenor's Motion for Summary Judgment, (ECF No. 25 ), is **GRANTED**.

The Clerk is directed to provide a copy of this Order to counsel of record and any unrepresented party.

**ENTERED:** February 6, 2023

Cheryl A. Eifert
United States Magistrate Judge